In the Matter of the Worker's Compensation Claim of Daniel R. PADILLA, Appellant (Employee–Claimant),

v.

LOVERN'S, INC., Appellee (Employer–Defendant).

No. 94–15.

Supreme Court of Wyoming.

Oct. 19, 1994.

John M. Walker of Hickey and Evans, Cheyenne, for appellant.

Lee E. Christian of Lee E. Christian, P.C., Fort Collins, CO, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

MACY, Justice.

Appellant Daniel R. Padilla appeals from the district court's order which affirmed the hearing examiner's denial of benefits for Padilla's back injury.

We affirm.

## ISSUES

Padilla presents two issues:

A. The worker's compensation benefits awarded to Mr. Padilla were subject to the doctrine of finality and as such should not have been revoked by the office of administrative hearings.

B. The worker's compensation benefits awarded to Mr. Padilla should not have been revoked by the office of administrative hearings as there was no medical testimony supporting employer's position.

## FACTS

Padilla worked as a house painter for Appellee Lovern's, Inc. While he was at work on April 29, 1992, painting the trim on a house, Padilla fell from a ladder and injured his left foot. None of his co-workers witnessed the accident. Padilla's employer took him to the emergency room at a local hospital where his foot was X-rayed and he was diagnosed as having a "[c]ontusion of the foot." The emergency room report stated that Padilla's "[b]ack [was] nontender."

Padilla went to see Richard Torkelson, M.D., an orthopaedic surgeon, on May 5, 1992, complaining of foot pain. Dr. Torkelson examined Padilla and directed him not to return to work. On May 18, 1992, Dr. Torkelson released Padilla for work, and Padilla reported to work the next day. When Padilla arrived at work, his employer confronted him and told him that, during his absence from work, one of his co-workers had seen him loading cement blocks and bags of cement into his father's truck. After the confrontation, Padilla quit his job.

On May 21, 1992, Padilla filed an employee's report of the injury which indicated that he had injured his left leg while he was working for Lovern's. On that same day, he returned to see Dr. Torkelson and reported that he had tenderness in his sciatic notch area. Dr. Torkelson referred Padilla to Stephen Martin, M.D., a physician and surgeon who limited his practice to neurological surgery. Dr. Martin diagnosed Padilla as probably having a "herniated lumbar disk" in his lower back. On July 15, 1992, Dr. Martin performed surgery on Padilla's back and removed the disk.

Padilla did not file an amendment to his employee's report of the injury to indicate that he had received a back injury. *See* WYO.STAT. § 27–14–504 (1991). The Workers' Compensation Division began making medical payments on May 28, 1992, to Padilla's doctors. On June 2, 1992, Padilla completed an application for temporary total disability benefits which referred only to his "injury" and did not specifically refer to a back injury. On the same day, the Workers'

Compensation Division sent a consent and waiver notice form to Lovern's which referred only to "the April 29 ... injury ... of your employee." Lovern's sent a letter dated June 15, 1992, to the Workers' Compensation Division which indicated that Lovern's disapproved of disability payments being paid to Padilla. In the letter, Lovern's referred only to Padilla's foot injury.

The Workers' Compensation Division issued an initial review dated June 30, 1992, which did not mention Padilla's back injury, and a determination of the disputed claim dated July 30, 1992, which concluded that Padilla was entitled to receive benefits. The determination of the disputed claim referred only to Padilla's "injury."

Lovern's did not learn until August or September of 1992 that Padilla had received a back injury. On September 14, 1992, the Workers' Compensation Division sent a notice of claims reimbursement to Lovern's. The notice informed Lovern's that it would be billed for all payments which had been made to Padilla because Lovern's did not have an active worker's compensation account on the date that Padilla was injured. In a letter to the Workers' Compensation Division dated September 23, 1992, Lovern's requested a hearing on the compensability of Padilla's injuries because, in part, "based upon the review of the file available at this time, the employer ... challenges any subsequent medical treatment in so far as the medical problems appear to be unrelated to the minor injury initially claimed."

Lovern's petitioned for a hearing on the determination of the disputed claim or, in the alternative, to reopen the case for fraud pursuant to WYO.STAT. § 27–14–605(a) (1991).[1] The Office of Administrative Hearings held a hearing in March 1993 and, after the hearing, issued an order which denied benefits for Padilla's back injury. In the decision letter attached to the order, the hearing examiner stated:

Critical to this Office's decision herein is the distinction which needs to be drawn between [Padilla's] left leg injury and the alleged back injury. As will be more fully

1. Amended by 1994 WYO.SESS.LAWS ch. 86, § 2 effective July 1, 1994.

addressed later, this Office concludes that finality attached to claims and awards made on account of the left leg injury, but not to claims and awards made on account of the alleged back injury. Thus, [Padilla] maintains the burden of proving that his alleged back injury arose out of his April 29, 1992, work-related accident.... This Office concludes that Padilla has failed to meet this burden.

. . . .

... [F]inality has never attached to any of the claims and awards made in connection with Padilla's alleged low back injury as sufficient and proper notice was not provided Lovern's. It was not until sometime in August, 1992, that Lovern's first received any notice of an alleged back injury—notice provided long after Padilla first sought back treatment and filed an accident report on May 21, 1992, and weeks after Padilla underwent back surgery on July 15, 1992....

Under the totality of the evidence presented, this Office is not persuaded that Padilla's back condition arose out of his April 29, 1992, accident with Lovern's. In addition to the numerous inconsistencies in his actions following April 29, 1992, Padilla lacks any credibility in testifying before this Office. This Office observed Padilla continually recant various assertions made under oath only when upon cross-examination he was confronted with certain evidence. In essence, Padilla appears to be an individual either not capable of or unwilling to testify truthfully.

. . . .

The medical testimony herein is based upon a questionable history and as such is not persuasive. Accordingly, when viewed together with the remaining evidence, this Office concludes that Padilla has failed to meet his burden of proving that his alleged back injury arose out of his April 29, 1992, accident with Lovern's. For these reasons, Padilla's claims relating to the alleged back injury must fail.

(Citations omitted.)

Padilla filed a petition for judicial review in the district court, and the district court af-firmed the hearing examiner's decision. Padilla appealed to this Court.

## FINALITY

Padilla contends that Lovern's should not have been allowed to have a hearing on the case because Lovern's failed to object in a timely manner to the Workers' Compensation Division's determination of the disputed claim. Lovern's argues that it was not given notice or an opportunity to be heard and, therefore, the Workers' Compensation Division's determination was not final and that, since finality had not attached to the Workers' Compensation Division's award for Padilla's back injury, the hearing examiner did not err by conducting a hearing. Lovern's asserts in the alternative that, if finality did attach, the hearing examiner should have reopened the case on the basis that Padilla's back injury claim was fraudulent.

Wyo.Stat. § 27–14–606 (1991) states:

Each determination or award within the meaning of [the Wyoming Worker's Compensation Act] is an administrative determination of the rights of the employer, the employee and the disposition of money within the worker's compensation account as to all matters involved. *No determination shall be final without notice and opportunity for hearing as required by this act.*

(Emphasis added.)

In construing a statute, we must determine whether the statute is clear or ambiguous. "[A] statute is unambiguous if its wording is such that reasonable persons are able to agree as to its meaning with consistency and predictability." *Allied–Signal, Inc. v. Wyoming State Board of Equalization*, 813 P.2d 214, 220 (Wyo.1991). "[A] statute is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations." 813 P.2d at 219–20. "[W]hether an ambiguity exists in a statute is a matter of law to be determined by the court." 813 P.2d at 220. If the language of a statute is clear and unambiguous, we apply the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. *Parker Land and Cattle Com-*

*pany v. Wyoming Game and Fish Commission*, 845 P.2d 1040, 1043 (Wyo.1993).

■ We hold that the language of § 27–14–606 is plain and unambiguous, and we conclude that, pursuant to § 27–14–606, no determination can be final unless the employer receives notice and an opportunity for a hearing.

■ Lovern's did not receive any notice that Padilla had suffered a back injury until after Padilla had undergone back surgery and after the Workers' Compensation Division had issued its determination of the disputed claim. The portion of the determination which was made in connection with Padilla's back injury was, therefore, not final. The hearing examiner properly held a hearing on Padilla's back injury claim. *See* § 27–14–606.

Our holding that Lovern's was entitled to receive notice and a hearing to dispute Padilla's back injury claim is dispositive; therefore, we do not need to address Lovern's alternative argument that it was entitled to have the hearing examiner reopen the case on the basis that Padilla's back injury claim was fraudulent.

### BURDEN OF PROOF

Padilla asserts that his benefits award should not have been revoked because Lovern's did not present any direct testimony whatsoever which indicated that Padilla's back injury was not related to his fall from the ladder while he was at work.

■ "The claimant has the burden of proving each essential element of [his] claim by a preponderance of the evidence." *Gilstrap v. State ex rel. Wyoming Workers' Compensation Division*, 875 P.2d 1272, 1273 (Wyo. 1994) (citing *Leonard v. McDonalds of Jackson Hole*, 746 P.2d 1261, 1263 (Wyo.1987)). "The party who appeals from an administrative determination has the burden of proving the lack of substantial evidence to sustain the ruling of the agency." *Jaqua v. State ex rel. Wyoming Workers' Compensation Division*, 873 P.2d 1219, 1221 (Wyo.1994). Whether an employee's injury occurred in the course of his employment is a question of fact. *Bag-*

*shaw v. Circle H Oilfield Service*, 753 P.2d 1044, 1045 (Wyo.1988). We review factual issues by applying the substantial evidence standard. WYO.STAT. § 16–3–114(c)(ii)(E) (1990).

> "Our task is to examine the entire record to determine if substantial evidence exists to support the hearing examiner's findings. We will not substitute our judgment for that of the hearing examiner if his decision is supported by substantial evidence. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions."

*Romero v. Davy McKee Corporation*, 854 P.2d 59, 61 (Wyo.1993) (citing *Farman v. State ex rel. Wyoming Workers' Compensation Division*, 841 P.2d 99, 102 (Wyo. 1992)).

*Bearden v. State ex rel. Wyoming Workers' Compensation Division*, 868 P.2d 268, 269 (Wyo.1994), *quoted in Hepp v. State ex rel. Wyoming Workers' Compensation Division*, 881 P.2d 1076, 1077–78 (Wyo.1994).

■ Dr. Martin testified that Padilla's back injury was the result of his fall from the ladder while he was at work. Dr. Martin also stated that the patient history which he received from Padilla was the sole basis for his conclusion. Dr. Martin further stated that having an accurate patient history was critical in making a diagnosis and in prescribing a treatment.

Padilla gave, at best, incomplete information to both Dr. Torkelson and Dr. Martin about his prior back injuries. Padilla did not tell Dr. Torkelson that he had experienced any prior back injuries. He reported to Dr. Martin that he had experienced one prior back injury in 1982 and that his back had completely healed after that injury. Padilla had, however, suffered back injuries in 1979, 1981, and 1985, each of which occurred while Padilla was working for a different employer. After the 1985 injury, Padilla was in traction in the hospital for thirteen days, he was disabled from work for approximately two years, and he received a settlement of $27,500 from his employer.

One of Padilla's co-workers testified that he had seen Padilla loading cement blocks

and a bag of cement into his father's truck after he had allegedly injured his back. Dr. Martin stated that, if Padilla had lifted cement blocks and bags of cement after he had supposedly injured his back, he would suspect "maximization of his symptomatology, malingering, faking." Dr. Torkelson stated that Padilla's back injury could have been caused either by a fall or by lifting.

Padilla's testimony conflicted with the other evidence. He testified that he was being honest when he reported his medical history to his doctors. He denied that he had worked for his father after the accident, and he claimed that his back injury was caused by the fall from the ladder while he was working for Lovern's.

The hearing examiner stated that Padilla's medical evidence was "based upon a questionable history and as such [was] not persuasive" and that Padilla "lack[ed] any credibility in testifying before this Office." He concluded that Padilla had failed to meet his burden of proving that his back injury arose out of the April 29, 1992, accident.

■ We have held that the finder of fact is not bound by the medical evidence and that he is entitled to consider relevant factors other than the medical evidence. *Forni v. Pathfinder Mines*, 834 P.2d 688, 693 (Wyo. 1992); *Cannon v. FMC Corporation*, 718 P.2d 879, 882 (Wyo.1986). The fact finder is in the best position to judge both the claimant's credibility and the weight to be given to the medical evidence. *Romero v. Davy McKee Corporation*, 854 P.2d 59, 63 (Wyo. 1993).

The hearing examiner's conclusion that Padilla failed to meet his burden of proof was supported by substantial evidence.

## CONCLUSION

The district court did not err when it affirmed the hearing examiner's decision to deny Padilla's request for worker's compensation benefits for his back injury.

Affirmed.